IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD RANDALL,              )
                             )    Civil Action No. 05 - 1257
        Petitioner,          )
                             )    District Judge Terrence F. McVerry
        v.                   )    Magistrate Judge Lisa P. Lenihan
                             )
HARRY WILSON,                )
                             )
        Respondent.          )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II. REPORT

Petitioner, Richard James Randall, Jr., a state prisoner incarcerated at the State Correctional Institution at Fayette, Pennsylvania, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his Petition, Petitioner raises claims concerning his 1999 child pornography convictions and the denial of his request for release on parole.

#### A. Relevant Facts[1]

On October 26, 1999, in the Court of Common Pleas of Lycoming County, Petitioner pleaded guilty to the charges of Sexual Abuse of

_____

1   Copies of the relevant state court records are attached to Respondent's Answer (doc. no. 7) and to Petitioner's Response (doc. no. 9).

Children (photographing a child involved in sexual activity), Sexual Abuse of Children (possessing photographs of a child involved in sexual activity) and Corrupting the Morals of a Minor, and was sentenced to an aggregate term of incarceration of from six (6) years and two (2) months to fifteen (15) years. Petitioner's trial attorney, William J. Miele, filed post-trial motions requesting that Petitioner be granted leave to withdraw his guilty plea or that he be granted a modification to his sentence. Following several extensions, Petitioner's motions were set to be heard on March 13, 2000. At that time, the Commonwealth argued that because Petitioner raised claims alleging ineffective assistance of trial counsel, new counsel should be appointed. The Trial Court agreed and ordered new counsel to be appointed. However, pursuant to Pa. R. Crim. P. 720(3)(a), Petitioner's post-sentence motions would be deemed denied if not decided within 150 days and no more extensions could be granted. Because the time period was about to expire, the Trial Court dismissed the post-trial motions indicating that new counsel could raise the claims in a petition under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. Ann. §§ 9541 *et. seq*.

Following the appointment and withdrawal of Attorney J. Michael Wiley, on October 26, 2001, Attorney Eric Lindhardt was appointed to represent Petitioner in his PCRA proceeding. On June 18, 2002, Attorney Lindhardt filed a PCRA petition requesting that

Petitioner be granted leave to file post-sentencing motions and a direct appeal *nunc pro tunc*.  On October 10, 2002, the Honorable William S. Kieser made a finding that Petitioner's motion had potential merit and scheduled a hearing for January 29, 2003.  On that date, procedural issues were raised by the Commonwealth and it was determined that the hearing should be rescheduled.  Argument on the procedural issues was held on February 4, 2003 before the Honorable Nancy L. Butts.  On February 10, 2003, Judge Butts ruled that Petitioner's PCRA petition was untimely.  On April 14, 2004, the Superior Court affirmed the judgment of the PCRA court.  Petitioner filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on September 21, 2004.

Petitioner filed a second PCRA Petition on May 18, 2005.  That Petition was dismissed by the Court on December 29, 2005.  No appeal was filed.

In the meantime, on April 20, 2005, Petitioner was denied release on parole from the Pennsylvania Board of Probation and Parole (the Board) citing the following reasons: (1)Petitioner's refusal to accept responsibility for the offenses he had committed; (2) his lack of remorse for the offenses he had committed; (3) a negative recommendation from the Department of Corrections; (4) reports, evaluations and assessments concerning his physical, mental and behavior condition and history; (5) his unacceptable

compliance with prescribed institutional programs; (6) his need to complete additional institutional programs and (7) his interview with the hearing examiner and/or Board member.   April 20, 2005 Parole Board Decision at 1-2.

### B. Exhaustion and Procedural Default

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review. *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).  Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and  highest court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838 (1999). The petitioner has the burden of establishing that exhaustion has been satisfied.  Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default

doctrine." <u>Gray v. Netherland</u>, 518 U.S. 152 (1996); <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991); <u>Doctor</u>, 96 F.3d at 678; <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 678 (3d Cir. 1996).  Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system.  It is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment.  <u>Coleman v. Thompson</u>, 501 U.S. at 750.

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine.  *Id.*; <u>Sistrunk</u>, 96 F.3d at 673.  Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims.  <u>Glass v. Vaughn</u>, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996); <u>Carter</u>, 62 F.3d at 595.  A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby

allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750; Carter, 62 F.3d at 595.

In the case at bar, the Petitioner attempted to present his claims to the PCRA Court through his PCRA Petition after the appointment and withdrawal of several counsel.  Initially, Judge Kieser reviewed his claim and determined they had merit.  However, Judge Butts later determined Judge Kieser did not have jurisdiction to review Petitioner's claims because his petition was filed outside the jurisdictional one-year limitation in the PCRA.  While this Court acknowledges that the one-year limitations period is independent of federal law such as would satisfy the procedural default doctrine, it is less clear whether the limitations period in this case is adequate where the Petitioner was represented by various counsel during the pendency of his post-trial motions and subsequent PCRA proceedings and relied on such counsel to protect and preserve his claims.  Notwithstanding, because it is clear that Petitioner has not demonstrated that he is entitled to federal habeas corpus relief with respect to his claim, this Court need not undertake the lengthy analysis of state law that would be required to determine the applicability of the procedural default doctrine. *See* Lines v. Larkins, 208 F.3d 153, 165 (3d Cir. 2000) (noting that

"federal courts should be most cautious before reaching a conclusion dependent upon an intricate analysis of state law that a claim is procedurally barred"), *cert. denied*, 121 S.Ct. 785 (2001).   Accordingly, this Court will review Petitioner's claim under the authority granted in 28 U.S.C. § 2254(b)(2), which provides that a federal court may deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirement.  *See* 28 U.S.C. § 2254(b)(2) (as amended by The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 142 Cong. Rec. H3305-01 (1996).

## C. Standard of Review

Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations.  28 U.S.C. § 2254.  Specifically, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence.  28 U.S.C. § 2254(e).  Where the state court fails to adjudicate or address the merits of a petitioner's claims, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact.  Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

## D. Review of Petitioner's Claims

Petitioner pleaded guilty to the charges at issue in his petition.  A guilty plea generally extinguishes a defendant's right

to collaterally attack independent claims of constitutional violations that do not relate to actual guilt.  In Pennsylvania, the only issues subject to review following the entry of a guilty plea are the voluntariness of the plea and the legality of the sentence.  Commonwealth v. Montgomery, 485 Pa. 110, 401 A.2d 318 (1979); Commonwealth v. Robinson, 442 Pa. 512, 276 A.2d 537 (1971).  The same is true under federal law.  See Tollett v. Henderson, 411 U.S. 258, 267 (1973) (". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea . . ..").

1.   Constitutional Requirements for Guilty Pleas

A defendant's plea of guilty amounts to a waiver of his constitutional right to a trial by jury.  The Supreme Court repeatedly has held that, as with any waiver of a constitutional right, the Due Process Clause of the United States Constitution requires that a guilty plea be made "knowingly, voluntarily and intelligently."  Boykin v. Alabama, 395 U.S. 238 (1969).  The constitutional standard is one that asks whether the plea

represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Id*. at 243.

Whether a plea of guilty is voluntary for purposes of the federal constitution is a question of federal law. <u>Marshall v. Lonberger</u>, 459 U.S. 422, 432 (1983).  To determine whether a guilty plea represents a voluntary and intelligent choice, a reviewing court must examine the totality of the circumstances surrounding the plea. <u>Brady v. United States</u>, 397 U.S. 742, 749 (1970).  To ensure that a plea is both knowing and voluntary, it cannot have been induced through misrepresentation or coercion, <u>Brady</u>, 397 U.S. at 750, the defendant must have notice of the nature of the charge(s) against him, <u>Henderson v. Morgan</u>, 426 U.S. 637, 645 (1976), the defendant must have an understanding of the law in relation to the specific facts at issue, <u>McCarthy v. United States</u>, 394 U.S. 459, 466 (1969), and the defendant must appreciate the consequences of the plea, *i.e.*, he must understand the rights he is surrendering through his plea.

Once entered, a defendant does not have an absolute right to withdraw a guilty plea. <u>United States v. Isaac</u>, 141 F.3d 477 , 485 (3d Cir. 1998).  Rather, a plea of guilty entered by one fully aware of the direct consequences must stand unless induced by threats, misrepresentation, or improper promises. <u>Mabry v. Johnson</u>,(1978) 467 U.S. 504, 509 (1984).  It is only when a defendant is not fairly apprized of the direct consequences of

pleading guilty that he may challenge his guilty plea under the Due Process Clause. *Id.*

In the case at bar, Petitioner signed a written guilty plea explanation of his rights and was present for a guilty plea hearing before the trial judge. During his hearing, the trial judge explained the offenses to which Petitioner was pleading guilty and the maximum penalties for each. Petitioner was also advised of his right to a jury trial and the rights flowing therefrom. Petitioner stated during his colloquy that he understood the permissible range of sentencing for each of the offenses to which he was pleading guilty. Indeed, he signed a written statement and testified during his oral colloquy that he was aware of the consequences of his plea. Furthermore, Petitioner was advised of his rights following the entry of his guilty plea and following his sentencing, including his post-sentence rights.

Petitioner executed an extensive written guilty plea colloquy that fully advised him of his constitutional rights, including the right to trial by jury, the presumption of innocence, and the requirement that the judge must accept the terms of any plea agreement. Furthermore, Petitioner acknowledged in open court that he had reviewed the guilty plea colloquy form with his attorney, that his attorney had answered all of his questions concerning the form, and that he had personally signed or initialed the form on each page. Finally, although due process does not require an

on-the-record development of the factual basis supporting a guilty plea, the record shows that the factual basis was established before entry of Petitioner's guilty plea.  Accordingly, the circumstances of Petitioner's guilty plea establish that his plea was constitutionally acceptable.

2.   Plea Agreement

Petitioner claims that the District Attorney compelled him to enter a guilty plea by promising him a one-to three year sentence. Additional considerations come into play when a plea is the result of a plea agreement between the prosecutor and the defendant.  In order to prove a breach of a plea agreement, the terms of the plea agreement must be established.  *See* United States v. Bogusz, 43 F.3d 82, 94 (3d Cir. 1994).  "Courts use a three-step analysis to review plea bargains:  first, they determine the agreement's terms and the conduct alleged to violate it; second, they determine if the conduct violated the plea agreement; and third, if the plea agreement is violated, they determine the remedy." *Id. See also* United States v. Moscahlaidis, 868 F.2d 1357, 1360 (3d Cir. 1989).

In order to receive relief with respect to this claim, Petitioner has the burden to establish, by a preponderance of the evidence, the government's violation of the plea agreement, United States v. Huang, 178 F.3d 184, 187 (3d Cir. 1999), for "the government is held only to those promises that it actually made to the defendant." United States v. Peglera, 33 F.3d 412, 413 (4th

Cir. 1994).  Petitioner has set forth no evidence that any plea agreement had been made in his case.  Consequently, Petitioner has not demonstrated that he is entitled to relief with respect to this claim.

3.   <u>Illegal Sentence</u>

Petitioner's third claim challenges the Trial Court's imposition of his sentence in the aggravated range.  A state prisoner may be granted federal habeas corpus relief only if he demonstrates that he is in custody in violation of the United States Constitution or federal law.  28 U.S.C. § 2254(a).  <u>Smith v. Phillips</u>, 455 U.S. 209 (1982); <u>Geschwendt v. Ryan</u>, 967 F.2d 877 (3d Cir.), *cert. denied*, 506 U.S. 977 (1992); <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991).  A federal habeas court does not sit to retry state cases *de novo* but examines the proceedings in the state court to determine if there has been a violation of federal constitutional standards.  <u>Barefoot v. Estelle</u>, 463 U.S. 880 (1983); <u>Milton v. Wainwright</u>, 407 U.S. 371 (1972).  Mere violations of state law or procedural rules cannot provide the basis for federal habeas relief absent a deprivation of constitutional magnitude.  <u>Engle v. Isaac</u>, 456 U.S. 107 (1982); <u>Wells v. Petsock</u>, 941 F.2d 253 (3d Cir. 1991), *cert. denied*, 505 U.S. 1223 (1992).

Generally, sentencing is a matter of state criminal procedure and does not fall within the purview of federal habeas corpus.

Wooten v. Bomar, 361 U.S. 888 (1959).  Where a sentence imposed is within the limits set by the law its severity is not grounds for relief under federal habeas corpus.  As such, a federal court will not review a state sentencing determination that falls within the statutory limit.  Gleason v. Welborn, 42 F.3d 1107, 1112 (7th Cir. 1994) (internal citation omitted), *cert. denied*, 514 U.S. 1109 (1995); Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987), *cert. denied*, 488 U.S. 926 (1988); Mira v. Marshall, 806 F.2d 636, 639 (6th Cir. 1986).

Consequently, a criminal sentence cannot be attacked in a habeas corpus proceeding unless the sentencing court lacked jurisdiction to impose it or committed a constitutional error that made the sentence or underlying conviction fundamentally unfair. United States v. Addonizio, 442 U.S. 178, 186 (1979); Bean v. United States, 679 F.2d 683 (7th Cir. 1982).  A sentence violates the Constitution only when it is extreme and "grossly disproportionate to the crime."  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) ("The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime.") (citation omitted).

Petitioner's sentencing claim does not raise any constitutional challenge.  The record demonstrates that Petitioner's sentence is not outside the statutory maximum for the

offenses charged.  Accordingly, Petitioner is not entitled to habeas corpus relief with respect to his third habeas claim.[2]

4.  Ex Post Facto

Next, Petitioner alleges he was wrongfully denied parole in violation of the *Ex Post Facto* Clause of the United States Constitution, which provides that "[n]o state shall . . . pass any . . . ex post facto law."  U.S. Const. Art. 1, § 10.  The Supreme Court has stated that "[t]o fall within the ex post facto prohibition, a law must be retrospective--that is it must apply to events occurring before its enactment--and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime."  Lynce v. Mathis, 117 S. Ct. 891, 896 (1997) (citation and quotation omitted).

Petitioner claims that the Board's requirement that he participate and complete Phase II of the Sex Offender Treatment Program, which would require that he admit to the underlying offenses, violates his rights under the *Ex Post Facto* Clause because this is a new requirement imposed in 2004.  The United States District Court for the Eastern District of Pennsylvania

_____

2.  Moreover, contrary to Petitioner's assertions, the trial judge clearly articulated his reasons for sentencing Petitioner in the aggravated range.  See Transcript of Guilty Plea and Sentencing Hearing, p.21.

recently rejected the same claim asserted by Petitioner in the
instant action.

> . . . Petitioner bears the burden of proving
> an Ex Post Facto Clause violation, that is,
> that a new law or policy is: (1)
> retrospective, or applies to events occurring
> before its enactment, and (2) adversely
> impacts him. Mickens-Thomas v. Vaughn, 321
> F.3d 374, 384 (3d Cir. 2003) (citing Weaver
> v. Graham, 450 U.S. 24, 29 (1981)).
> Petitioner fails to meet that burden. In his
> habeas petition, he claims the "Admitters
> Group" program was instituted in September
> 2000. However, an "Admitters Group" program
> was in place prior to 1997, as reflected in
> Weaver v. Pa. Bd. of Prob. and Parole and
> Mickens-Thomas. See Weaver v. Pa. Bd. of Prob.
> and Parole, 688 A.2d 766, 769
> (Pa.Commw.Ct.1997); Mickens-Thomas v. Vaughn,
> 321 F.3d at 381-82. Moreover, Petitioner has
> not established that, at the time of his
> offense, completion of the "Admitters Group"
> program was not a consideration the Parole
> Board employed for parole of sex offenders.
> See Garner v. Jones, 529 U.S. 244, 247 (2000)
> (explaining that the law in effect at the time
> of the defendant's offense is the law to be
> compared to the new law in order to apply Ex
> Post Facto Clause analysis); Weaver v. Graham,
> 450 U.S. at 30-31, 36 (same).

Williams v. Martinez, 2006 WL 2588726, *5 n. 18 (E. D. Pa. Sept. 7,
2006).

Petitioner pleaded guilty in 1999. Pennsylvania and federal
caselaw reveal that, prior to 1999, participation in the Sex
Offenders Treatment Program in a DOC institution required a
defendant to admit his crimes. Thus, Petitioner can not state a
violation of his rights as protected by the *Ex Post Facto* Clause.
*Accord* Shaffer v. Meyers, 163 Fed. Appx. 111, 2006 WL 45547 (3d

Cir. 2006) (holding that the decision of the Pennsylvania Board of Probation and Parole to deny prisoner's application for parole due to his refusal to participate in sex offender treatment program did not violate the ex post facto clause, where it was not clear that Board used new standards, retroactively applied, in denying parole and prisoner did not support his contention that application of criteria before alleged new standards would have likely resulted in his release on parole); <u>Tyler v. Gillis</u>, 2006 WL 2038398 (M. D. Pa. July 19, 2006) (same).

5.   <u>Fifth Amendment</u>

In his next claim, Petitioner alleges that the Board violated his 5th Amendment rights because it denied him parole based on his refusal to accept responsibility for his criminal actions.   In other words, Petitioner claims that the Board's requirement that he admit his guilt for his convictions before it will grant his parole application violates his Fifth Amendment Right against self-incrimination.

In this regard, the Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."   This right is referred to as the Fifth Amendment privilege against self-incrimination.   The Supreme Court has instructed that "[t]he [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to

answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." <u>Lefkowitz v. Turley</u>, 414 U.S. 70, 77 (1973). Furthermore, the Fifth Amendment privilege provides protection against the imposition of substantial penalties on a person who decides to invoke his right against self-incrimination. <u>Minnesota v. Murphy</u>, 465 U.S. 420, 434 (1984).

Petitioner claims that the Board's refusal to grant his parole based on his refusal to admit his responsibility for his conviction violates his Fifth Amendment privilege against self-incrimination. Petitioner does not state a violation of his Fifth Amendment rights, however, as the Board's "acceptance of responsibility" requirement would not be considered "compelled" testimony within the meaning of the Fifth Amendment. In this regard, in <u>Ohio Adult Parole Authority v. Woodard</u>, 523 U.S. 272, 286 (1998), a unanimous Court held that a voluntary interview with the Ohio Clemency Board did not amount to "compelled" testimony for purposes of the Fifth Amendment. In making this conclusion, the Court observed that the petitioner already was under a lawfully-imposed sentence of death. If clemency was granted, he would have obtained a benefit; if it was denied, he would be in no worse position than he was before. The Court concluded that the pressure to speak in the hope of improving his chance of being granted clemency did not make the interview compelled. <i>Id</i>. at 285-286.

In <u>McKune v. Lyle</u>, 536 U.S. 24 (2002), the Supreme Court extended this principal to participation in sex offender treatment programs (SOTP).  In that case, the Supreme Court held that the adverse consequences faced by a state prisoner for refusing to make admissions required for participation in a SOTP were not so severe as to amount to compelled self-incrimination because the prisoner's refusal did not extend his prison term or affect his eligibility for good time credits.

Similarly, in the case at bar, Petitioner is serving a lawfully-imposed sentence:  if parole is granted, he would obtain a benefit; if it is denied, he is in no worse position than he was before.  The pressure to accept responsibility for the crimes for which he was convicted in order to improve his chances for parole does not make his admissions "compelled" for purposes of the Fifth Amendment.  *See* <u>Thorpe v. Grillo</u>, 80 Fed. Appx. 215, 2003 WL 22477890 (Table) (3d Cir. 2003) (holding that the Pennsylvania Department of Corrections (DOC) policy of excluding from the SOTP those inmates who do not admit guilt to the offense did not violate an inmate's Fifth Amendment right against self-incrimination).

Petitioner admits that the Board is conditioning parole on his acceptance of responsibility only for the acts for which he pleaded guilty.  Petitioner does not have any constitutional right to be released from parole prior to the completion of his maximum

sentence.    Thus,   the   granting   of   parole   is   a   benefit   to Pennsylvania prisoners.   In this situation, the majority of courts have determined that there is no "compelled" testimony for purposes of  the  Fifth  Amendment  privilege  because  such  prisoners  could choose not to accept responsibility for their convictions without becoming subject to any additional punishment.[3]

In light of the authority discussed above, this Court cannot conclude  that  the  Board's  denial  of  the  Petitioner's  parole applications based on his refusal to accept responsibility for his child  pornography  convictions  violated  his  right  against  self-incrimination   as   protected   under   the   Fifth   Amendment. Consequently, his petition does not set forth any basis upon which

---

[3]    *See, e.g.*, Ainsworth v. Risley, 244 F.3d 209, 214+ (1st Cir. 2001) (holding that inmates' reduced likelihood of parole for refusing  to  participate  in  SOP  did  not  constitute  "penalty" sufficient  to  compel  incriminating  speech  in  violation  of  Fifth Amendment); Neal v. Shimoda, 131 F.3d 818, 833 & n. 18 (9th Cir. 1997) (rejecting Fifth Amendment self-incrimination claim because of absence  of  evidence  of  a  real  possibility  that  state  would  use admission  to  sex  offenses  against  plaintiffs  in  future  criminal proceeding and because there was no danger that an inmate would be compelled to admit to other sexual misconduct of which prison or law enforcement officials were not already aware); Brooker v. Warden, No.  98-466-JD,  1999  WL  813893,  at  *4  (D.N.H.  June  22,  1999) (recognizing  "coercive  effect  of  a  requirement  that  an  inmate satisfactorily  participate  in  a  sex  offender  treatment  program"  as a  prerequisite  to  parole  but  finding  no  compulsion  because  inmate voluntarily participated in program and because "he could choose not to participate without increasing the hardship of his incarceration since he was not subject to any additional punishment for refusing to participate."); Russell v. Eaves, 722 F. Supp. 558, 560-61 (E.D. Mo. 1989) (holding that a prisoner's parole hearing testimony is not compelled, and therefore not violative of the Fifth Amendment).

this court can grant federal habeas corpus relief for a violation of his Fifth Amendment rights.[4]

## F. Certificate of Appealability

The Antiterrorism Act included several major reforms to the federal habeas corpus laws.  Section 102 of the Antiterrorism Act (28 U.S.C. § 2253(c) (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended Section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."

In the case at bar, Petitioner has not made any showing that he has been denied any of his constitutional rights.  Accordingly, a certificate of appealability should be denied.

## III. <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully recommended that this Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of

---

4.  As to his claim of perjury, Petitioner pleaded guilty so he cannot be exposed to a charge of perjury for admitting now what he admitted in 1999.  Finally, he has set forth no facts or law to substantiate any Eighth Amendment violation with respect to the Board's command that he serve his maximum sentence.

service to file objections to this report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.


                                    /s/Lisa Pupo Lenihan
                                    Lisa Pupo Lenihan
                                    U.S. Magistrate Judge


Dated: September 26, 2006


cc:  The Honorable Terrence F. McVerry
     United States District Judge

     Richard James Randall, Jr.
     EB-4654
     SCI Fayette
     50 Overlook Drive
     LaBelle, PA 15450-0999

     Michael A. Dinges
     Assistant District Attorney
     Office of District Attorney
     48 West Third Street
     Williamsport, PA 17701

     Mary Lynch Friedline
     Assistant Attorney General
     Office of the Attorney General
     564 Forbes Avenue
     6th Floor, Manor Complex
     Pittsburgh, PA 15219